1 | BRIAN TOMINA, Bar No. 255386
2 | OLIVER LAW GROUP PC
5900 Wilshire Blvd., Suite 2600
3 | Los Angeles, CA 90036
4 | Telephone: (248) 327-6556
Facsimile: (248) 436-3385
5 | notifications@oliverlg.com
www.legalactionnow.com
6 |
7 | Attorneys for Plaintiff
8 | Steven Hodges, and on Behalf
of All Others Similarly Situated,
9 |

FILED
CLERK, U.S. DISTRICT COURT

APR 23 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

10 |
UNITED STATES DISTRICT COURT
11 | CENTRAL DISTRICT OF CALIFORNIA
12 |

13 | STEVEN HODGES,
Individually and on Behalf of All
14 | Others Similarly Situated,
15 |

Case No. CV13-02849-RGK (JCx)

16 | Plaintiff,

**CLASS ACTION
COMPLAINT**

17 |
18 |     v.

1. VIOLATIONS OF
19 | BUSINESS & PROFESSIONS
CODE SECTION
20 | 17200 ET SEQ.

21 | VITAMIN SHOPPE, INC;

2. VIOLATIONS OF
22 | CALIFORNIA CIVIL CODE
SECTION 1750 ET SEQ.
23 |

24 | Defendant.

3. VIOLATIONS OF THE
FALSE ADVERTISING
25 | LAW, CALIFORNIA
BUSINESS & PROFESSIONS
26 | CODE SECTION 17500 ET
SEQ.
27 |
28 |

CLASS ACTION COMPLAINT
1

4. BREACH OF EXPRESS WARRANTY

5. UNJUST ENRICHMENT

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff STEVEN HODGES, ("Plaintiff"), by and through his attorneys OLIVER LAW GROUP, P.C., individually and on behalf of all others similarly situated, alleges the following:

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class Members in the proposed Class, the combined claims of proposed Class Members exceed $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state other than Defendant's state of citizenship.

## NATURE OF THE ACTION

2. This is a civil class action brought individually by Plaintiff and on behalf of a class of persons similarly situated, ("Class Members"), who purchased the dietary supplement True Athlete Training Formula ("Product") from Defendant.

3. The class members are all persons located within the state of California who purchased the Product.

4. Defendant Vitamin Shoppe, Inc., advertises, manufactures, markets, sells and distributes the Product.

5. The dietary supplement industry is a growing and extremely competitive business environment, especially the sports (bodybuilding) supplement segment.

6. Most companies in this segment distort, if not totally ignore, competent and reliable scientific data regarding their products and ingredients.

7. The Product is generally categorized as a "Pre-Workout Muscle Building and Performance Enhancing" product.

8. Defendant uses ineffective compounds relating to their efficacy claims and also dramatically under dose certain compounds, yet boast their efficacy.

9. Defendant makes numerous false, fraudulent, misleading, and deceptive label claims regarding the Product.

10. Defendant uses several false, fraudulent, misleading, unfair and deceptive claims on the label of the Product. (See Exhibits A and B).

11. Defendant uses several false, fraudulent, misleading, unfair and deceptive claims at the point of purchase for the Product on their websites www.vitmainshoppe.com and www.true-athlete.com. (Exhibits A and B).

12. By Defendant's unfair, deceptive, fraudulent, unfair and misleading practices, Plaintiff and Class Members have been unfairly deceived into purchasing the Product.

13. Plaintiff brings this action challenging Defendant's claims relating to the Product on behalf of himself and all others similarly situated, under California's Unfair Competition Law, False Advertising Law, Consumer Legal Remedies Act, Breach of Express Warranty, and Unjust Enrichment.

14. Plaintiff seeks an order compelling Defendant to (1) cease marketing the Product using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Defendant has been unjustly enriched, and (4) destroy all misleading and deceptive materials.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over all causes of action asserted herein.

16. Plaintiff will likely have evidentiary support after a reasonable opportunity for further investigation or discovery regarding Defendant's sales of the Product during the class period.

17. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this District. Venue is proper pursuant to 28 U.S.C. § 1391(c) because

Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District, through the promotion, sale, and marketing of their Product in this District.

18. Defendant and other out-of-state participants can be brought before this Court pursuant to state and federal law.

## THE PARTIES

19. During the Class period, Plaintiff and Class Members purchased the Product through Defendant's website www.vitaminshoppe.com and/or one of the many brick and mortar locations owned by Defendant. Plaintiff and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint.

20. Plaintiff is a resident of the County of Los Angeles, State of California, and the events set forth in this Complaint took place therein, who, on or about December 2, 2012, purchased the Product for his own use, and not for resale, from Defendant's website www.vitaminshoppe.com.

21. Vitamin Shoppe, Inc. is a New Jersey corporation headquartered at 2101 91st Street, North Bergen, New Jersey. Vitamin Shoppe is a retailer of nutritional products and sports supplements as well as herbs, homeopathic remedies, and beauty aids. The company currently sells its products through

## CLASS ACTION COMPLAINT
5

more than 500 stores located in 38 states and Puerto Rico, as well as through internet sales.

## FACTUAL ALLEGATIONS

22. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

23. Plaintiff Hodges reviewed Defendant's websites and the Product's label prior to purchasing the Product through Defendant's website www.vitaminshoppe.com.

24. Plaintiff Hodges reasonably relied on the information provided by Defendant when making the decision to purchase the Product.

25. Defendant's claims are false and misleading.

26. Defendant had access, but knowingly and/or recklessly ignored all competent and reliable scientific evidence regarding the Product and its ingredients.

27. Specifically, Defendant uses an ingredient, L-Arginine Alpha Ketoglutarate ("AAKG"), known to be useless for increasing nitric oxide production in the body, enhancing athletic performance, improving cardiovascular function, or building muscle. Defendant also knowingly under doses the remaining active ingredients to save money but still entice consumers by using efficacy claims for the compounds Creatine Monohydrate ("CM"), Beta-Alanine (as Carnosyn®), and AstraGin™.

28. These ingredients are well known compounds in the sports supplement industry.

29. Defendant uses the inclusion of these compounds in the Product to support their false and misleading claims referred to herein.

30. Defendant unapologetically, and with no remorse, boasts the inclusion of these popular ingredients in the Product, but then under doses them in the formula to make the Product useless.

31. This inclusion of ingredients at levels under the clinical dosage is nothing more than a new tactic at selling consumers "snake oil".

### *L-Arginine Alpha Ketoglutarate*

32. Defendant's Product contains AAKG which is falsely marketed as a muscle building and endurance and performance enhancing compound.

33. The Product contains 1 gram of AAKG per serving. The Defendant directs the consumer to "take 1 to 3 scoops prior to training or activity". (Exhibit B).

34. This compound falsely claims to provide increased muscle strength, muscle mass, stamina, improved cardiovascular function, by boosting Nitric Oxide levels, increasing vasodilation and extending muscle "pumps".

35. "Muscle Pumps" refers to increased blood flow to the muscles, which in turn is supposed to increase the size of the muscles.

36. Nitric oxide is a gaseous signaling molecule known to contribute to the control of vascular tone, and is considered to play a role in the vasodilatation of muscle resistance vessels during exercise.

37. Defendant uses the false and/or misleading claims:

a) "An advanced pre-workout formula that provides muscle, endurance & performance support" (Exhibit A);

b) "Fueled by Creatine, Arginine and Beta Alanine" (Exhibit A);

c) "Serious muscle, endurance and performance support" (Exhibit B);

d) "True Athlete Training Formula contains the important base nutrients creatine, arginine, and beta alanine, as well as AstraGin™, a proprietary nutrient uptake enhancer" (Exhibit B);

e) "BODYBUILDING- COMBINE TRAINING FORMULA WITH PROTEIN OR AMINO ACIDS FOR ADDED MUSCLE SUPPORT" (Exhibit B); and

f) "FITNESS/SPORTS TRAINING- FOR ADDED ENERGY AND RECOVERY SUPPORT, COMBINE TRAINING FORMULA WITH AMINO ACIDS AND/OR NATURAL FRUIT JUICE" (Exhibit B).

38. L-arginine (2-amino-5-guanidino-pentanoic acid) is a conditionally-essential, proteinogenic amino acid and a natural constituent of dietary proteins.

39. L-arginine-enhanced vasodilation and blood flow to working muscles during resistance exercise is alleged to provide an even greater impetus for increasing muscle strength and hypertrophy than exercise alone.

40. AAKG supplementation has been shown not to increase muscle blood flow after resistance training, thus providing no increase in size to the muscles trained[1].

41. Presently, there are several studies involving an L-arginine-based approach to increase circulating nitric oxide in humans; however, none of the studies have demonstrated any positive results that would justify the claims made by Defendant.

42. A number of studies have been conducted on L-arginine and L-arginine-containing supplements to assess the effectiveness in which they increase the levels of nitric oxide in the blood.

43. It should be noted that nitric oxide is very difficult to measure in circulation due to its relative instability and short half-life.

---

[1] *See* Tang J, Lysecki P, Manolakos J, Tarnopolsky M, Phillips S. Bolus arginine supplementation affects neither muscle blood flow nor muscle protein synthesis in young men at rest or after resistance exercise. *Journal of Nutrition*, 141:195-200, 2011; *see also* Willoughby DS, Boucher T, Reid J, Skelton G, Clark M. Effects of 7 days of arginine-alpha-ketoglutarate supplementation on blood flow, plasma L-arginine, nitric oxide metabolites, and asymmetric dimethyl arginine after resistance exercise. *International Journal of Sport Nutrition and Exercise Metabolism,* 21:291-99, 2011.

F-629    T-312 P0012    04-25-'13 14:36 FROM- AIMCO PROPERTIES LLP

44. Therefore, the metabolites nitrate and nitrite (NOX) are most often measured.

45. The available published data on this issue has clearly indicated that these so-called nitric oxide inducing supplements which contain L-arginine are ineffective in inducing increases in circulating nitric oxide.

46. For example, a single oral dose of L-arginine provided at 0.1 gram/kg was in ineffective at increasing NOX in the blood[2].

47. L-arginine provided orally at 6 g/day for three days was shown to have no effect on plasma NOX metabolite levels in well-trained male athletes[3].

48. More specifically, it has been shown that alleged "nitric oxide inducing" supplements were ineffective at increasing circulating NOX levels and muscle tissue oxygenation in response to resistance exercise[4].

---

[2] *See* Tsai PH, Tang TK, Juang CL, Chen KW, Chi CA, Hsu MC. Effects of arginine supplementation on post-exercise metabolic responses. Chinese Journal of Physiology, 52:136-42, 2009.

[3] *See* Liu T, Wu C, Chiang C, Lo Y, Tseng H, Chang C. No effect of short-term arginine supplementation on nitric oxide production, metabolism and performance in intermittent exercise in athletes. *Journal of Nutritional Biochemistry,* 20:462-68, 2009.

[4] *See* Bloomer RJ, Williams SA, Canale RE, Farney TM, Kabir MM. Acute effect of nitric oxide supplement on blood nitrate/nitrite and hemodynamic variables in resistance trained men. *Journal of Strength and Conditioning Research*, 24:2587-92, 2010.; *see also* Bloomer R, Farney T, Trepanowski J, McCarthy C, Canale R, Schilling B. Comparison of pre-workout nitric oxide stimulating dietary supplements on skeletal muscle oxygen saturation, blood nitrate/nitrite, lipid

49. Additionally, the provision of 12 grams/day of AAKG for seven days significantly increased plasma L-arginine levels but had no significant effect on circulating NOX or blood flow, either at rest or in response to resistance exercise[5].

50. Based on this premise, hemodynamic function (heart rate and blood pressure) would increase to justify the increased blood flow, ultimately improving cardiovascular function.

51. In a study examining the effects of acute L-arginine supplementation and resistance exercise on arterial function in young men, there was no significant change in blood flow and hemodynamic and vascular responses when 7 grams of L-arginine was given immediately before resistance exercise[6].

peroxidation, and upper body exercise performance in resistance training men. *Journal of the International Society of Sport Nutrition,* 7:16-30, 2010.

[5] *See* Willoughby DS, Boucher T, Reid J, Skelton G, Clark M. Effects of 7 days of arginine-alpha-ketoglutarate supplementation on blood flow, plasma L-arginine, nitric oxide metabolites, and asymmetric dimethyl arginine after resistance exercise. *International Journal of Sport Nutrition and Exercise Metabolism,* 21:291-99, 2011.

[6] *See* Fahs C, Heffernan K, Fernhall B. Hemodynamic and vascular response to resistance exercise with L-arginine. *Medicine and Science in Sports and Exercise,* 41:773-79, 2009.

52. It has been shown that single doses of alleged "nitric oxide inducing" supplements were ineffective at increasing blood flow in response to resistance exercise[7].

53. It has also been shown that 6 grams of L-arginine delivered either intravenously or orally[8] and 12 grams/day for 7 days[9] did not result in any significant changes in blood pressure, heart rate, or cardiac output.

54. In assessing the effects of high (5.7 grams) and low (2.8 grams) doses of L-arginine supplementation for 4 weeks in endurance-trained male athletes,

---

[7] *See* Bloomer RJ, Williams SA, Canale RE, Farney TM, Kabir MM. Acute effect of nitric oxide supplement on blood nitrate/nitrite and hemodynamic variables in resistance trained men. *Journal of Strength and Conditioning Research*, 24:2587-92, 2010.; *see also* Bloomer R, Farney T, Trepanowski J, McCarthy C, Canale R, Schilling B. Comparison of pre-workout nitric oxide stimulating dietary supplements on skeletal muscle oxygen saturation, blood nitrate/nitrite, lipid peroxidation, and upper body exercise performance in resistance training men. *Journal of the International Society of Sport Nutrition,* 7:16-30, 2010.

[8] *See* Bode-Boger S, Boger R, Galland A, Tsikas D, Frolich J. L-arginine-induced vasodilation in healthy humans: pharmacokinetic-pharmacodynamic relationship. *British Journal of Clinical Pharmacology,* 46:489-97, 1998.

[9] *See* Willoughby DS, Boucher T, Reid J, Skelton G, Clark M. Effects of 7 days of arginine-alpha-ketoglutarate supplementation on blood flow, plasma L-arginine, nitric oxide metabolites, and asymmetric dimethyl arginine after resistance exercise. *International Journal of Sport Nutrition and Exercise Metabolism,* 21:291-99, 2011.

there was no improvement in physical performance as measured by run time to exhaustion[10].

55. In addition, no improvement in the time required to run 31 km was observed after 14 days of L-arginine supplementation at a dose of 15 grams/day[11].

56. L-arginine provided orally at 6 g/day for three days was shown to have no effect on muscular power generated during an anaerobic cycle ergometer test in well-trained male athletes[12].

57. The provision of 3.7 grams of AAKG failed to improve muscle endurance or significantly affect the blood pressure response to anaerobic work[13].

58. Furthermore, eight weeks of resistance training combined with AAKG supplementation at a daily dose of 12 grams appeared to be safe and well

---

[10] *See* Abel T, Knechtle B, Perret C, Esser P, von Arx P, Knecht H. Influence of chronic supplementation of arginine aspartate in endurance athletes on performance and substrate metabolism - a randomized, double-blind, placebo-controlled study. *International Journal of Sports Medicine*, 26:344-49, 2005.

[11] *See* Colombani PC, Bitzi R, Frey-Rindova P, Frey W, Arnold M, Langhans W, Wrenk C. Chronic arginine aspartate supplementation in runners reduces total plasma amino acid level at rest and during a marathon run. *European Journal of Nutrition*, 38:263-70, 1999.

[12] *See* Liu T, Wu C, Chiang C, Lo Y, Tseng H, Chang C. No effect of short-term arginine supplementation on nitric oxide production, metabolism and performance in intermittent exercise in athletes. *Journal of Nutritional Biochemistry,* 20:462-68, 2009.

[13] *See* Greer BK, Jones BT. Acute arginine supplementation fails to improve muscle endurance or affect blood pressure responses to resistance training. Journal of Strength and Conditioning Research, 25:1789-94, 2011.

tolerated, but had only modest improvements in muscle strength and power, and had no effects on body composition or aerobic capacity[14].

59. In assessing the effects of high (5.7 grams) and low (2.8 grams) doses of L-arginine supplementation for 4 weeks in endurance-trained male athletes, there was no improvement in physical performance as measured by run time to exhaustion[15].

60. In addition, no improvement in the time required to run 31 km was observed after 14 days of L-arginine supplementation at a dose of 15 grams/day[16].

61. AAKG supplementation, at the levels present in the Product and at the recommended doses, have been shown to be ineffective at increasing circulation of nitric oxide, causing vasodilatation and increasing blood flow, increasing muscle strength and mass, and increasing cardiovascular-based exercise performance.

---

[14] *See* Campbell B, Roberts M, Kerksick C, Wilborn C, Marcello B, Taylor L, Nassar E, Leutholtz B, Bowden R, Rasmussen C, Greenwood M, Kreider R. Pharmokinetics, safety, and effects on exercise performance of L-arginine alpha-ketoglutarate in trained adult men. *Nutrition,* 22:872-881, 2006.

[15] *See* Abel T, Knechtle B, Perret C, Esser P, von Arx P, Knecht H. Influence of chronic supplementation of arginine aspartate in endurance athletes on performance and substrate metabolism - a randomized, double-blind, placebo-controlled study. *International Journal of Sports Medicine,* 26:344-49, 2005.

[16] *See* Colombani PC, Bitzi R, Frey-Rindova P, Frey W, Arnold M, Langhans W, Wrenk C. Chronic arginine aspartate supplementation in runners reduces total plasma amino acid level at rest and during a marathon run. *European Journal of Nutrition,* 38:263-70, 1999.

*Creatine Monohydrate ("CM")*

62. The Products contain CM, which has been clinically proven to increase strength and muscle mass when used by bodybuilders.

63. The only dosing of CM that has shown to be truly effective has been a loading period, usually around 0.3 grams/kg/day, for 3 to 5 days, then a continued dosing of 3-5 grams/day[17].

64. Ingesting smaller amounts of CM (e.g., 2–3 grams/day) will increase muscle creatine stores over a 3–4 week period, however, the performance effects of this method of supplementation are less supported[18].

65. CM given in low doses actually decreased the free creatine content in muscles rather than increasing it.

---

[17] *See* Jager, R; Harris, R.C.; Purpura, M; Francaux, M. Comparison of new forms of creatine in raising plasma creatine levels. Journal of the International Society of Sports Nutrition, 4(17), 2007; *see also* Jager, R; Purpura, M; Shao, A; Inoue, T; Kreider, R.B. Analysis of the efficacy, safety, and regulatory status of novel forms of creatine. Amino Acids, 40: 1369-1383, 2011; *see also* Clark, J.F. Creatine and Phosphocreatine: A review of their use in exercise and sport. J Athl Train, 32(1): 45-51, 1997; *see also* Graef, J.L; Smith, A.E.; Kendall, K.L.; Fukuda, D.H.; Moon, J.R.; Beck, T.W.; Cramer, J.T.; Stout, J.R. The effects of four weeks of creatine supplementation and high-intensity interval training on cardiorespiratory fitness: a randomized control trial. Journal of International Society of Sports Nutrition, 6(18), 2009; *see also* Greenhaff, P.L. The nutritional biochemistry of creatine. The Journal of Nutritional Biochemistry, 8(11): 610-618, 1997; *see also* Tarnopolsky, M.A.. Creatine as a therapeutic strategy for myopathies. Amino Acids, 40: 1397-1407, 2011.

[18] *See* Buford, T.; Kreider, R.; Stout, J.; Greenwood, M.; Campbell, B.; Spano, M.; Ziegenfuss, T.; Lopez, H.; Landis, J.; Antonio, J. International Society of Sports Nutrition position stand: creatine supplementation and exercise. International Society of Sports Nutrition, 4:6, 2007.

66. Defendant's Product contains 1 gram of CM per serving. The Defendant directs the consumer to "take 1 to 3 scoops prior to training or activity". (Exhibit B).

67. Only if the consumer consumed the maximum dosage suggested by the Defendant would the consumer have the slightest possibility of receiving the benefits of CM.

68. The clinically and most scientifically supported dosage of CM for increasing athletic performance is 5 grams/day.

69. Defendant's following claims are untrue based on the under dosing of CM.

70. Defendant uses the false and/or misleading claims:

   a) "An advanced pre-workout formula that provides muscle, endurance & performance support" (Exhibit A);

   b) "Fueled by Creatine, Arginine and Beta Alanine" (Exhibit A);

   c) "Serious muscle, endurance and performance support" (Exhibit B);

   d) "True Athlete Training Formula contains the important base nutrients creatine, arginine, and beta alanine, as well as AstraGin™, a proprietary nutrient uptake enhancer" (Exhibit B);

   e) "BODYBUILDING- COMBINE TRAINING FORMULA WITH PROTEIN OR AMINO ACIDS FOR ADDED MUSCLE SUPPORT" (Exhibit B); and

f) "FITNESS/SPORTS TRAINING- FOR ADDED ENERGY AND RECOVERY SUPPORT, COMBINE TRAINING FORMULA WITH AMINO ACIDS AND/OR NATURAL FRUIT JUICE" (Exhibit B).

### *Beta-Alanine*

71. The Products contain Beta-Alanine (as Carnosyn®) which has been shown in clinical studies, at a dose dependent amount, to delay muscular fatigue, promote muscular endurance, and improve workout performance.

72. The effective dosage of the patented Beta-Alanine is 2.4 to 3.2 grams per day, as suggested by the patent-holder. (Exhibit C).

73. Defendant's Product contains 500mg of Beta Alanine (as Carnosyn®) per serving. The Defendant directs the consumer to "take 1 to 3 scoops prior to training or activity". (Exhibit B).

74. Defendant's following claims are untrue based on the under dosing of Beta-Alanine (as Carnosyn®).

75. Defendant uses the false and/or misleading claims:

a) "An advanced pre-workout formula that provides muscle, endurance & performance support" (Exhibit A);

b) "Fueled by Creatine, Arginine and Beta Alanine" (Exhibit A);

c) "Serious muscle, endurance and performance support" (Exhibit B);

d) "True Athlete Training Formula contains the important base nutrients creatine, arginine, and beta alanine, as well as AstraGin™, a proprietary nutrient uptake enhancer" (Exhibit B);

e) "BODYBUILDING- COMBINE TRAINING FORMULA WITH PROTEIN OR AMINO ACIDS FOR ADDED MUSCLE SUPPORT" (Exhibit B); and

f) "FITNESS/SPORTS TRAINING- FOR ADDED ENERGY AND RECOVERY SUPPORT, COMBINE TRAINING FORMULA WITH AMINO ACIDS AND/OR NATURAL FRUIT JUICE" (Exhibit B).

### *AstraGin*™

76. Defendant's Product contains the compound AstraGin™ which is marketed by the TM holder as a natural compound that in multiple pre-clinical studies has been shown to increase the absorption of certain nutrients, including Arginine.

77. The clinically required dosage of AstraGin™, to achieve these results, is 50 mg.

78. Defendant's Product contains 17 mg of AstraGin™ per serving. The Defendant directs the consumer to "take 1 to 3 scoops prior to training or activity". (Exhibit B).

79. Only if the consumer consumed the maximum dosage suggested by the Defendant would the consumer have the slightest possibility of receiving the benefits of AstraGin™.

80. Defendants' following claims are untrue based on the under dosing of AstraGin™.

81. Defendants use the false and/or misleading claims:

a) "Creatine, Arginine and Beta Alanine with AstraGin™ Nutrient Uptake Enhancer" (Exhibit B); and

b) "True Athlete Training Formula contains the important base nutrients creatine, arginine, and beta alanine, as well as AstraGin™, a proprietary nutrient uptake enhancer" (Exhibit B).

82. The claims referred to in pp. 81 are also misleading because they suggest that AstraGin™ enhances the uptake of Creatine and Beta Alanine. However, there have been no scientifically reliable studies on AstraGin's effect on Creatine or Beta Alanine absorption.

### Defendant's Omissions of Material Facts

83. Defendant includes the compounds in the Product, but fails to disclose to consumers that they are either completely incapable of providing muscle, endurance or performance support, or that the compounds are under dosed as to not be able to provide muscle, endurance or performance support.

***Defendant's Misleading Statements Regarding "Servings Per Container"***

84. As stated above, the Product is useless at servings of 1-2 scoops. (Exhibit B).

85. Further, even at 3 full scoops, Defendant's Product is arguably useless to consumers.

86. Defendant's recommended dosage is 1-3 scoops. (Exhibit B).

87. However, under the Product's "Supplement Facts" on the label, the serving size is listed at 1 Scoop, and Servings Per Container is listed at 90. (Exhibit B).

88. Defendant's claim that there are 90 servings contained in the Product is misleading because at that dosage-one scoop- the Product is completely useless.

### *Conclusion*

89. At the Product's dosing protocols it is impossible for Defendant to meet their advertising, labeling and marketing claims contained herein.

### **RELIANCE AND INJURY**

90. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

91. When purchasing the Product, Plaintiff was seeking a product that had the qualities described in Defendant's advertising, labeling and marketing.

92. Plaintiff read and relied on the deceptive claims contained herein.

**CLASS ACTION COMPLAINT**
20

93. Plaintiff believed the Product had the qualities he sought, but the Product was actually unsatisfactory to Plaintiff for the reasons described herein.

94. Plaintiff paid more for the Product, and would have been unwilling to purchase the Product at all, absent the false and misleading labeling complained of herein. Plaintiff would not have purchased the Product absent these claims and advertisements.

95. For these reasons, the Product was worth less, if it all, than what Plaintiff paid for it.

96. Instead of receiving a product that had actual and substantiated healthful or other beneficial qualities, the Product Plaintiff received was one that does not provide the claimed benefits.

97. Plaintiff lost money as a result of Defendant's deceptive claims and practices in that he did not receive what he paid for when purchasing the Product.

98. Plaintiff altered his position to his detriment and suffered damages in an amount equal to the amount he paid for the Product.

## CLASS ALLEGATIONS

99. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

100. Plaintiff brings this action on his own behalf and as a Class Action Pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the following Class:

All Persons in the State of California who have spent money purchasing the Product from Defendant from four years from the first-filed complaint in this action until the final disposition of this and any and all related cases.

101. The abundance of Class Members renders joinder of all Class members individually, in one action or otherwise, impractical.

102. This action involves questions of law and fact common to Plaintiff and Class Members including:

(a) Whether Defendant violated the California Civil Code Section 1750 *et seq.*;

(b) Whether Defendant violated the California Business & Professions Code Section 17200 *et seq.*;

(c) Whether Defendant violated the False Advertising Law, Cal. Bus. & Prof. Code Section 17500 *et seq.*;

(d) Whether Defendant breached an express warranty;

(e) Whether Defendant was unjustly enriched at the expense of the Class Members; and

(f) Whether Plaintiff and Class Members sustained damages and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

Excluded from the Class is: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant

1  has a controlling interest or which has a controlling interest in Defendant and its

2  legal representatives, assigns and successors of Defendant; and (c) all persons who

3

4  properly execute and file a timely request for exclusion from the Class.

5  103. *Numerosity*: The Class is composed of thousands of persons geographically

6     dispersed throughout the State of California, the joinder of whom in one

7

8     action is impractical. Moreover, upon information and belief, the Classes

9     are ascertainable and identifiable from Defendant's records.

10  104. *Commonality*: Questions of law and fact common to the Class exist as to all

11     members of the Class and predominate over any questions affecting only

12

13     individual members of the Class. These common legal and factual issues

14     include, but are not limited to the following:

15

16     (a) Whether Defendant violated the California Civil Code Section 1750 *et*

17        *seq.*;

18     (b) Whether Defendant violated the California Business & Professions Code

19

20        Section 17200 *et seq.*;

21     (c) Whether Defendant violated the False Advertising Law, Cal. Bus. &

22        Prof. Code Section 17500 *et seq.*;

23

24     (d) Whether Defendant breached an express warranty;

25     (e) Whether Defendant was unjustly enriched at the expense of the Class

26        Members; and

27

28

**CLASS ACTION COMPLAINT**
23

(f) Whether Plaintiff and Class Members sustained damages and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

105. *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in manufacturing, marketing, advertising, warranting and selling the Product, Defendant's conduct in concealing material facts regarding the Product, Defendant's false, fraudulent, unfair and misleading claims and Plaintiff's and Class Members' purchasing the Product.

106. *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving false and misleading advertising, product liability and product design defects.

107. *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members

be required to bring separate actions, this Court and Courts throughout California would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
#### Violations of California Business and Professions Code § 17200 *et seq.*

108. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

109. Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

110. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the False Advertising Law and the Consumer Legal Remedies Act.

111. Defendant's conduct is further "unlawful" because it violates the Federal Food, Drug, and Cosmetic Act and its implementing regulations in at least the following ways:

(1) Defendant's deceptive statements violate 21 U.S.C. § 343(a), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular";

(2) Defendant's deceptive statements violate 21 C.F.R. § 101.14(b)(3(i), which mandates "substances" in dietary supplements consumed must contribute and retain "nutritional value" as defined under 21 C.F.R. § 101.14(a)(2)(3) when consumed at levels necessary to justify a claim.

112. Defendant's conduct is further "unlawful" because it violates The California Sherman Food, Drug, and Cosmetic Law, which incorporates the provisions of the Federal Food, Drug and Cosmetic Act.

113. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein also constitute "unfair" business acts and practices under the UCL in that Defendant's conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

114. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein also constitute "fraudulent" business acts and practices under the UCL in that Defendant's claims are false, misleading, and have a tendency to deceive the Class and the general public.

115. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

116. Plaintiff further seeks an order for the disgorgement and restitution of all monies from the sale of the Defendant's Product, which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

## SECOND CLAIM FOR RELIEF
### Violations of California Legal Remedies Act
### Cal. Civ. Code § 1750 *et seq.*

117. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

118. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein.

119. This cause of action is brought on behalf of all people of the State of California in accordance with the provisions of the California Legal Remedies Act (California Civil Code section 1770). Class members have lost money or property as a result of Defendant's actions as set forth herein.

120. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of violation of the California Legal Remedies

Act since Defendants are still representing that the Product has characteristics and abilities which are false and misleading.

121. Defendant's wrongful business practices have caused injury to Plaintiff and the Class.

122. Pursuant to section 1770 of the California Civil Code, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in this Complaint.

123. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

124. Plaintiff and the Class also seek Punitive Damages since Defendant was put on notice of its violations of the California Legal Remedies Act and took no remedial actions.

### THIRD CLAIM FOR RELIEF
### Violations of the False Advertising Law, Business and Professions Code Sections 17500 *et seq.*

125. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

126. In violation of Cal. Bus. & Prof. Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Product.

127. Defendant knew and reasonably should have known that the advertising, marketing and labeling of the Product was untrue and/or misleading.

128. As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## FOURTH CLAIM FOR RELIEF
### Breach of Express Warranty

129. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

130. Defendant made several different express warranties upon which Plaintiff relied in making his purchase, including the false and misleading claims contained herein.

131. In fact, there is no competent and reliable scientific evidence that support any of Defendant's claims, and actually there is competent and reliable scientific evidence refuting those claims.

132. The Plaintiff and Class Members received a product that did not provide muscle, endurance and performance support.

133. These facts constitute breaches of all applicable express warranties as alleged in this complaint.

# FIFTH CLAIM FOR RELIEF
## Unjust Enrichment

134. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

135. Plaintiff and Class Members conferred benefits on Defendant by purchasing the Product.

136. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchase of the Product. Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented the Product's efficacy, which caused injuries to Plaintiff and Class Members because they would have not purchased the Product if the true facts would have been known.

137. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff and the Class Members demand judgment in their favor against the Defendant, as follows:

a. A determination that this action proceed as a class action and Plaintiff adequately represents the Class;

b. An Order requiring Defendant to bear the cost of class notice;

c. For compensatory, consequential and special damages in amounts proved, as well as statutory damages, including a return of all amounts paid for the Product sold by the Defendant to the Plaintiff and the Class Members;

d. For interest thereon, in the maximum amount allowable under applicable law;

e. For delay damages thereon, in the maximum amount allowable under applicable law;

f. For costs of suit, in the maximum amount allowable under applicable law;

g. For punitive damages, to the maximum amount permitted under applicable law;

h. For an award of attorneys' fees and costs, to the maximum amount permitted under applicable law;

i. For injunctive relief, restraining and enjoining the Defendant from continuing to use these deceptive sales tactics;

1    j. For restitution of the funds which were unjustly enriched by Defendant, at

2       the expense of Plaintiff and Class Members; and

3    k. For such other and further relief for the Plaintiffs as this Honorable Court

4

5       shall deem just.

6

7    DATED: April 18, 2013

8

9                                  By:    /s/ Brian Tomina
                                          BRIAN TOMINA, Bar No. 255386
10                                        OLIVER LAW GROUP, P.C.
                                          5900 Wilshire Blvd., Suite 2600
11                                        Los Angeles, CA 90036
12                                        Telephone: (248) 327-6556
                                          Facsimile: (248) 436-3385
13                                        notifications@oliverlg.com
14                                        www.legalactionnow.com

15
                                          NICK SUCIU III
16                                        (Pro Hac Vice Application Pending)
17                                        OLIVER LAW GROUP, P.C.
                                          950 W. University Drive, Ste. 200
18                                        Rochester, MI 48307
19                                        Telephone: (248) 327-6556
                                          Facsimile: (248) 436-3385
20                                        notifications@oliverlg.com
21                                        www.legalactionnow.com

22

23                                        Attorneys for Plaintiff
                                          Steven Hodges, and on Behalf
24                                        of All Others Similarly Situated

25

26

27

28

**CLASS ACTION COMPLAINT**
32

## DEMAND FOR JURY TRIAL

Plaintiff and the Class Members demand trial by jury as to all matters and issues triable.

DATED: April 18, 2013

By:  /s/ Brian Tomina
BRIAN TOMINA, Bar No. 255386
OLIVER LAW GROUP PC
5900 Wilshire Blvd., Suite 2600
Los Angeles, CA 90036
Telephone: (248) 327-6556
Facsimile: (248) 436-3385
notifications@oliverlg.com
www.legalactionnow.com

NICK SUCIU III
(Pro Hac Vice Application Pending)
OLIVER LAW GROUP PC
950 W. University Drive, Ste. 200
Rochester, MI 48307
Telephone: (248) 327-6556
Facsimile: (248) 436-3385
notifications@oliverlg.com
www.legalactionnow.com

Attorneys for Plaintiff
Steven Hodges, and on Behalf
of All Others Similarly Situated

# EXHIBIT A



# INTRODUCING TRUE ATHLETE"

PRODUCT CATEGORY | THE TRUE ATHLETE™ STORY | NSF° CERTIFIED FOR SPORT° | FIND A STORE

## PRE-WORKOUT
### TRAINING FORMULA

✔ AN ADVANCED PRE-WORKOUT FORMULA THAT PROVIDES
   MUSCLE, ENDURANCE & PERFORMANCE SUPPORT
✔ FUELED BY CREATINE, ARGININE AND BETA ALANINE
✔ NO ARTIFICIAL COLORS, FLAVORS OR SWEETENERS



       

CREATINE THREANINE | ARGININE FORMULA | TRAINING FORMULA | WHEY PROTEIN - CHOCOLATE | WHEY PROTEIN - VANILLA | MULTIVITAMIN FOR MEN | MULTIVITAMIN FOR WOMEN

  © 2011 Vitamin Shoppe. All Rights Reserved. Site Map

F-629      P0038      T-312      AIMCO PROPERTIES LLP  -FROM- 04-25-'13 14:45



# INTRODUCING TRUE ATHLETE



PRODUCT CATEGORY | THE TRUE ATHLETE STORY | NSF CERTIFIED FOR SPORT | FIND A STORE

## THE TRUE ATHLETE® STORY

**THE MISSION**
EMPOWER & INSPIRE
EMPOWER: The True Athlete® mission is to empower athletes and fitness enthusiasts who crave performance, quality and integrity. We are inspired by the Olympic mindset. If you win naturally, it means more. It's about competing against yourself to achieve your personal best.

**THE PHILOSOPHY**
*TRUE ATHLETE® EMBRACES 5 CORE TRUTHS:*
1. Compete with honor
2. Commit to the journey
3. Dedicate yourself to your regimen
4. Empower individual achievement
5. Focus your mind to power your body

**THE FORMULA**
Purity of intent led to purity in formulation. We developed a revolutionary line of sports nutrition that athletes and fitness enthusiasts would embrace with no artificial colors.

       



 © 2011 Vitamin Shoppe. All Rights Reserved. Site Map

# EXHIBIT B



theVitamin
Shoppe.

hello, Nick (not Nick?)          store locator | my account | help | 1-866-293-3367                    (0 items) your shopping cart

search



questions?
ask as you for help
chat live

vitamins, supplements, herbs & more     sports nutrition & workout support     home, spa & green living     natural bath & beauty

| shop by brand | shop by health concern | vitamins & supplements | herbs & homeopathics | foods & beverages | kids & pets | articles & recipes |

 **free shipping** get free shipping on orders over $25  order by 5 p.m. e.t. ships same day   learn more     ⊙ reorder products   see your order history ▸

Sports Nutrition & Workout Support  >  Performance Supplements  >  Pre-Workout Formulas  >  Training Formula



Like   49 people like this. Be the first of your friends.
True Athlete (More from True Athlete)

# Training Formula

9.2 Ounces Powder Item #: VS-6024 / 1774439

Write a review
Read 14 Reviews

**Value Price: $24.99**

Earn **25** Healthy Awards points when you buy this item. What's this?
Availability: **In Stock - Will Ship Today**

Quantity: 1    **ADD TO CART**

Got a question about this product?
Ask customers who own this item.
See 1 question / 5 answers

## 🔥Live Chat

Have a question? Speak to a customer service representative live.

questions?
i'm here to help.
chat live

We're ready to help. For this sort of question, please contact us one of these ways:

- Call us: 9 am - 9 pm ET - 1-866-293-3367
- Chat live with our expert Health Enthusiasts
- Email us

Or, view our privacy policy.



Product Info

Supplement Facts

04-25-'13 14:46 FROM- AIMCO PROPERITES LLP   T-312 P0041   F-629

Reviews

Customer Q&A

**Product Label**

TRUE ATHLETE

NATURALLY DRIVEN

Serious muscle, endurance and performance support. That's what you get with True Athlete Training Formula. No filler. No fluff. No hype. Just the primary active ingredients needed to give you the advanced pre-workout support you want. Developed with the athlete and fitness enthusiast in mind, True Athlete Training Formula contains the important base nutrients creatine, arginine and beta alanine, as well as AstraGin, a proprietary nutrient uptake enhancer. This ™ed ingredient is produced from ginseng and astragalus and has been shown to improve absorption of amino acids, glucose, vitamins and other nutrients over placebo. This streamlined formula can be customized to meet your athlete and fitness needs.

BODYBUILDING - COMBINE TRAINING FORMULA WITH PROTEIN OR AMINO ACIDS FOR ADDED MUSCLE SUPPORT
FITNESS/SPORTS TRAINING - FOR ADDED ENERGY AND RECOVERY SUPPORT, COMBINE TRAINING FORMULA WITH AMINO ACIDS AND/OR NATURAL FRUIT JUICE
ENDURANCE - CAN BE TAKEN WITH ELECTROLYTES OR ADDED TO YOUR FAVORITE SPORTS BEVERAGE

True Athlete Training Formula is lightly sweetened with stevia, so it can be taken alone or in combination with other sports nutrition supplements.

Products that are designated "NSF Certified for Sport" are rigorously tested to help ensure that they contain no banned substances, unlisted ingredients, or harmful impurities.

www.true-athlete.com

Directions

As a dietary supplement, take 1 to 3 scoops prior to training or activity.

Warning

Consult your healthcare provider prior to use if you are pregnant, nursing, taking any medication or have any medical conditions. KEEP OUT OF REACH OF CHILDREN.

Does Not Contain:

No Artificial Colors, Flavors or Sweeteners. NO Yeast, Corn, Wheat, Gluten, Sugar, Salt, Soy, Dairy, Citrus, Fish, Preservatives, Artificial Colors or Flavors Added

How do you read a supplement facts label?

Supplement Facts
Serving Size 1 SCOOP (2.9 GM)
Servings Per Container 90

|                         | Amount Per Serving | % Daily Value |
|-------------------------|--------------------|---------------|
| Creatine Monohydrate    | 1 Gm               | N/A*          |
| ARGININE AKG            | 1 Gm               | N/A*          |
| BETA ALANINE (CARNOSYN) | 500 Mg             | N/A*          |
| ASTRAGIN                | 17 Mg              | N/A*          |

* Daily value not established
Other Ingredients:
Stevia.

Need more help?                      Like this category?
Get advice from friends >            Follow trending products

4.1 (based on 14 reviews)

75% of respondents would recommend this to a friend.

F-629        T-312 P0042        04-25-'13 14:46 FROM- AIMCO PROPERTIES LLP

# EXHIBIT C

| Share | 0 | More | Next Blog»                                    Create Blog  Sign In

**SATURDAY, NOVEMBER 26, 2011**

## CarnoSyn® FAQs--Advanced (Product Development)



When we talk about new product development, often the questions revolve around the taste and stability of CarnoSyn®. This post is an attempt to cut straight to the point for every New Product Developer out there.

Does CarnoSyn® Beta-Alanine require a loading phase?

Yes. If you're taking 3.2g per day, it typically takes from 4-6 weeks to reach maximum muscle carnosine levels. But the half life of Beta-Alanine in the body is approximately 49 days. So don't limit Beta-Alanine to pre-workouts. It can be added to various formulas to create "PERFORMANCE" proteins, BCAAs, EAAs, vitamins, water, energy drinks and more. Why not get more out your everyday products by adding CarnoSyn®?

Is Beta-Alanine hygroscopic?

Beta-Alanine is a white, free-flowing powder that is slightly hygroscopic. It generally poses no problem with moisture, but adding silica to a powder formula is often recommended to keep moisture low and flowability high.

What is the particle size?

Beta-Alanine is 20-40 mesh. The particle size variance

**About**



Compound Solutions, Inc.

Compound Solutions is a science-based ingredient supplier and product developer specializing in amino acids.

View my complete profile

Get CarnoSyn® Beta-Alanine for your product

http://carnosynworkout.biz/
http://www.compoundsolutions.com/

**Twitter Feed**


CarnoSyn Workout
**CarnosynWorkout**

CarnosynWorkout NEW! CarnoSyn® Study Is Published!: A new study using CarnoSyn Beta-Alanine was just published in August 2012 in... bit.ly/U160Wj
87 days ago · reply · retweet · favorite

CarnosynWorkout Infinite Turns To CarnoSyn® For "HP" Series: Infinite Labs recently launched its High Performance (HP) series of... bit.ly/JVJqro
210 days ago · reply · retweet · favorite

CarnosynWorkout CarnoSyn® Has Hit Europe!: Olimp is gigantic player in Europe's bodybuilding scene. Recently, though, they launc... bit.ly/LHKaSp
210 days ago · reply · retweet · favorite

CarnosynWorkout Announcing CarnoSyn® In 1.M.R.!: CarnoSyn® Beta-Alanine is now in the new 1.M.R. 1.M.R. has come on strong in th... bit.lv/JxSVh8

between different manufacturers is extremely small. It is naturally granular. If you micronize it, it will take on more hygroscopic properties and you'll have to break up the clumps in production. Just FYI, micronizing Beta-Alanine is 100% marketing gimmick. It is worthless to micronize something so incredibly soluble and absorbable in water.

How does CarnoSyn® Beta-Alanine taste?

Beta-Alanine tastes neutral. It will not negatively impact a drink's taste.

Is CarnoSyn® Beta-Alanine stable?

Yes, Beta-Alanine is stable in powder form. It is stable in heat (melting point is 210°C) and light, and it has a three-year shelf life in powder form in its original containers. Compound Solutions, Inc. is currently working on liquid stability. Two-month data suggests it is stable in water (RTDs).

Is CarnoSyn® Beta-Alanine soluble in water?

It is extremely soluble in water—55 grams per 100 milliliters of water.

Is CarnoSyn® Beta-Alanine easy to formulate with?

In terms of taste, solubility, stability and hygroscopicity, Beta-Alanine is one of the easiest ingredients in sports to formulate with.

What dosage forms can CarnoSyn® Beta-Alanine be used in?

Among others, powders, RTDs, gels, stick packs, confectionary, tablets and capsules.

Why not just take Carnosine?

Because ingesting Carnosine is costly and inefficient. Ingested Carnosine breaks into Beta-Alanine and Histidine and is then

210 days ago · reply · retweet · favorite

CarnosynWorkout Beach Body's Newest Pre-Workout Contains CarnoSyn® Beta-Alanine: Beach Body is most famous for owning the P90X e... bit.ly/w0Lt40
321 days ago · reply · retweet · favorite

Join the conversation

Connect with Facebook

Click here for my Facebook Page
Like      3 people like this. Be the first of your friends.

Total Pageviews

# 14,677

Followers

Join this site                              💬
with Google Friend Connect

Members (1)

Already a member? Sign in

Blog Archive

▶ 2012 (11)

▼ 2011 (29)

  ▶ December (1)

  ▼ November (24)

    HDX--New Beverage of the Year?

    Coming Soon... Hemo Rage Turbo Shot!

    Tri-Phase Endurance--GREAT feedback--CarnoSyn® Inc...

    NEW CARNOSYN® PATENT!

    RSP's Fast Fuel--All New Formula with CarnoSyn®

    Scivation's Novem Re-Launches With CarnoSyn®

    Where Is CarnoSyn Patented?

    Cytosport Launches Monster

F-629          9450 0P0d          T-312          AIИCO PROPERTIES LLP     WON-ŁI:41 ŁI,-S2-40

uses only 60% of ingested Carnosine.

How much CarnoSyn® Beta-Alanine should be dosed in a product?

Most of the studies have used 3.2 grams per day. Because Beta-Alanine causes a tingling sensation called paresthesia, it is best to split the 3.2 gram dose into two to three doses per day. We have found 1.2 grams per dose is a good dose for the mass market because the tingling sensation is not overwhelming. However, many people in bodybuilding like to take up to 1.6 grams per dose for a more intense experience.

What is paresthesia?

It is a harmless tingling sensation many feel for 10 to 20 minutes after ingesting Beta-Alanine. Most people like the sensation because they can feel it working.

Posted by Compound Solutions, Inc. at 9:17 PM  ✉

No comments:

Post a Comment

Comment as: Select profile... ▾

Publish   Preview

Newer Post                    Home                    Older Post

Subscribe to: Post Comments (Atom)

---

The Next Revolution?

Look For The CarnoSyn® Logo

CarnoSyn® FAQs--Advanced (Product Development)

CarnoSyn® FAQs-- Intermediate

Dr. Roger Harris Receives Lifetime Achievement Awa...

CarnoSyn® FAQs--Basic

Beta-Alanine Does NOT Buffer Lactic Acid

NDS--The Engine That Could

How To Get CarnoSyn® In Your Product

Muscle Pharm's Assault Is CarnoSyn® Strong

CarnoSyn® versus Beta-Alanine

Purple Wraath--Now With CarnoSyn®!

CarnoSyn® #1 In The World

Watch Out...For...BETA-CRET

BSN Launches HUGE CarnoSyn® Product

Beta-Alanine Shortage Is Over!

► May (3)

► January (1)

► 2010 (29)

F-629          P0046   T-312          04-25-'13 14:47 FROM- AIMCO PROPERTIES LLP